Samuel J. Silverman, J.
This is an article 78 proceeding in the nature of prohibition to restrain the New York City Commission on Human Rights from proceeding with a hearing basically on the charge that advertisements for public and private employment in the Republic of South Africa each constitute an advertisement by an employer which “ expresses, directly or indirectly, any limitation, specification or discrimination as to * * * race * * * color * * * or any intent to make any such limitation, specification or discrimination ” (Administrative Code of the City of New York, § Bl-7.0, subd. 1, par. [d]) and that in publishing such advertisements the New York Times is guilty of aiding the doing of the unlawful discriminatory practices forbidden by the act. (Administrative Code, § Bl-7.0, subd. 6.)
Petitioner, New York Times Company, objects that the whole proceeding before the Commission on Human Rights is beyond *18 that agency’s jurisdiction because (a) it relates to the foreign affairs of the United States, a matter within the exclusive jurisdiction of1 the Federal Government; (b) it is in violation of the First Amendment prohibition against restraints on freedom of the press; and (c) the fact that the advertisements use the words “ South Africa ”, does not make them advertisements which ‘ ‘ express, directly or .indirectly ’ ’ a prohibited discrimination.
If, as petitioner basically charges, this proceeding is essentially part of an attack on South Africa and its system of apartheid, then it would seem that the matter is indeed one relating to the regulation of the foreign affairs of the United States, and thus beyond the jurisdiction of the State or any of its political subdivisions.
On the other hand, the advertisement does appear in a New York newspaper, addressed to residents of New York, and no doubt such residents, reading the advertisement against the background of general information in this country about South Africa’s racial policies, will believe that it makes a very substantial difference whether an applicant for employment is white or black. Whether this makes the advertisement fall afoul of the prohibition against an advertisement which “ expresses, directly or indirectly” (italics supplied) the prohibited discriminatory practice or the intent to make such discrimination is not obvious to me. Nor is it -clear to me what, if any, effect the publication and reading of such advertisements may have in fomenting racial discord among the citizens of New York of various races; and whether that effect is such as to be more than -an unavoidable incident of an area — foreign relations — which is beyond the jurisdiction of the State or any of its political subdivisions, or whether it is so independent an evil as to fall within the general power of the State and its political subdivisions to regulate acts within their territories.
In the circumstances, I think I should let the hearing proceed, so that these and any other relevant factors may be explored.
I note that at present respondent commission has not directed petitioner to do or refrain from doing anything (except participate in a hearing), although the commission has decided that it has jurisdiction and has joined in the complaint before it.
If and when the commission should issue any sort of order against petitioner — other than simply an order to proceed to hearing — the statute contains a plain procedure for judicial review (Administrative Code, § Bl-9.0) and, indeed, the com *19 mission’s only power to enforce its order is to apply to the court for enforcement thereof. (Administrative Code, § Bl-8.0, subd. 4; § Bl-9.0.)
As has been frequently said, ‘ ‘ Prohibition should not issue except in cases of extraordinary circumstances or extreme necessity, and when there is no other adequate remedy. ’ ’ (Matter of Duchin v. Peterson, 12 A D 2d 622; accord Matter of Marra v. County Ct. of County of Genesee, 17 A D 2d 902.) The court has discretion to deny prohibition where the absence of jurisdiction is not clear, and there is some other remedy available. (Cf. Baltimore Mail S. 8. Co. v. Fawcett, 269 N. Y. 379, 384.)
In the case at bar, as I have indicated, the answers are not clear to me; I think that further exploration at a hearing may be enlightening both on the issue or jurisdiction and on the substantive question of whether the use of the phrase “ South Africa ” does indirectly, at least, express an intent to discriminate on the basis of rgee or color. There is an adequate judicial remedy available if the commission issues a cease and desist order or any other order directing petitioner to do or refrain from doing something.
There remains the question whether the very holding of a hearing is, in itself, such an infringement of, such an unreasonable burden on, a constitutional right of petitioner that it should be restrained. (Cf. Baltimore Mail S. S. Co. v. Fawcett, supra.)
The constitutional right to which petitioner here refers is its First Amendment right of freedom of the press and the corresponding rights under section 8 of article I of the State Constitution. What is involved here is not the freedom of petitioner to print news or opinion or even advertisements relating thereto. It is the freedom to print a commercial advertisement; and that is subject to much greater restriction than the printing of news, opinion, etc. I do not think that the holding of the proposed hearing before the Commission on Human Rights will constitute an unconstitutional or unreasonable burden on petitioner’s constitutional right of freedom of the press. In that connection I note that on June 6, 1973, complainants before the commission amended their complaint so as to delete the references to practices in South Africa, thus further reducing the burden of the hearing by limiting the inquiry as to the situation in South Africa to an examination of the laws of that country. And it would of course be the duty of the commission to see to it that the hearing is limited to its proper function of making a factual record leading to a reasonably expeditious decision.
Accordingly the petition is dismissed.
*20 The stay of hearing heretofore granted is continued until 10 days after publication of this decision to enable petitioner if it is so advised to make any application it wishes to an appellate court.